A96A0085. THOMAS v. HOLT et al.
A96A0273. THOMAS v. METROPOLITAN ATLANTA RAPID TRANSIT AUTHORITY et al.
A96A0915, A96A0916. HOLT et al. v. THOMAS; and vice versa.
(471 SE2d 300)

BEASLEY, Chief Judge.

Plaintiff Thomas was employed by MARTA as a fare collector when he was arrested for theft of revenue by MARTA police officers Holt, Montrose, and Wiley. After a jury found Thomas not guilty of all criminal charges, he filed this action against MARTA and the three officers for damages.

The evidence introduced at trial showed that Thomas had been employed by MARTA for approximately 20 years. He most recently worked as a fare collector at MARTA's Brookhaven station. On May 15, 1993, Thomas was placed under surveillance by the defendant officers, who were investigating the possible theft of revenues.

After Thomas had finished collecting fares, the officers observed

him take his fare box into a locked room which he opened with a key. Officer Wiley, while standing outside the room, heard a loud scrubbing noise. Officer Montrose joined him and opened the door with her key. The two officers observed that the fare box was open, plaintiff was adjusting his clothing, and there was a bulge at his waistline.

Thomas closed the fare box and exited the room. With some difficulty, he rolled the fare box up a flight of stairs to a platform where MARTA riders enter and exit trains. While he was ascending the stairs, the lock came off the fare box. Officers Holt and Montrose approached him when he arrived on the platform and asked to speak with him in a staff room downstairs.

They entered the room and a scuffle ensued. According to Thomas, it resulted from the officers' efforts to physically restrain him because he attempted to leave. Wiley testified that during the course of the scuffle, a bag containing money came out of Thomas' pant leg; Thomas testified it came out of his pocket. After the money was discovered, Thomas was handcuffed.

According to Holt and Montrose, Thomas voluntarily accompanied them to the staff room, but Thomas said the two officers physically forced him to go with them. They also contradicted Thomas' testimony that he had collected fares by hand; they testified that he did not collect any money from MARTA patrons by hand but rather would direct them to place their fares in the fare box.

Thomas sought damages for personal injuries arising during and after his arrest, malicious prosecution, slander, and civil rights violations under 42 USC § 1983. The jury found in favor of the defendants on the claims for personal injuries and slander. As to the claim for malicious prosecution, the jury awarded $56,000 in general and special damages, $219,000 in punitive damages, and $2,500 in attorney fees against MARTA, Holt, and Montrose. On Thomas' § 1983 claims, the jury awarded $1.25 in general and special damages and $1.25 in punitive damages, against Holt and Montrose.

After the jury returned its verdict, Thomas moved for an award of attorney fees under 42 USC § 1988. Judgment was later entered against Holt and Montrose for all damages awarded by the jury and against MARTA for all but punitive damages. Every party but Wiley moved for j.n.o.v. and new trial, and the court denied Thomas' motion for attorney fees. Among other things, the court concluded that Thomas was not a "prevailing party" under § 1988, because he received only nominal damages on his § 1983 claims. Several months after entry of the attorney-fee order, the court denied all the motions for j.n.o.v. and new trial. MARTA has not appealed, but instead has satisfied that part of the judgment for which it, Holt, and Montrose are liable (i.e., on the malicious prosecution claim, all but punitive damages).

In Case No. A96A0085, Thomas appealed from the judgment as well as from the denial of his motion for attorney fees. He only enumerates error in the latter. In Case No. A96A0915, Holt and Montrose appealed the denial of their motion for j.n.o.v. Case No. A96A0916 is Thomas' cross-appeal, which again contends that the court erred in denying Thomas' motion for attorney fees. Case No. A96A0273 is an appeal by Thomas from an order denying a motion to require Holt and Montrose to post a supersedeas bond.

We have consolidated Case Nos. A96A0085 and A96A0915 because our decision in the latter case controls the former. We dismiss Case No. A96A0916 because it is duplicative of Case No. A96A0085. See *McClure v. Gower*, 259 Ga. 678, 680 (385 SE2d 271) (1989). We did not expedite Case No. A96A0273, as Thomas made no request for expedition; we now consolidate this appeal with the remaining appeals and dismiss it as moot.

1. The defendant officers contend that the trial court erred in denying their motion for directed verdict on Thomas' § 1983 claim because of their qualified immunity.[1] It was based upon the theory that by seizing him on the MARTA platform *and* requiring him to accompany them to the staff room downstairs, they arrested him without probable cause and thus illegally.

According to Holt, Thomas was asked to accompany the officers to the staff room because the MARTA platform was crowded, noisy with trains coming in and out, and unsafe in that it was unenclosed and the tracks were unprotected. According to Montrose, the officers did not intend to arrest Thomas but rather to summon his supervisor so the supervisor could question him. Montrose testified the officers believed they were authorized to place Thomas in investigative detention based on a reasonable suspicion of criminal activity.

We apply the principles expressed in the following cases.

"*Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968), recognizes that although a police officer may not have probable cause to arrest someone, if there is a reasonable suspicion of criminal wrongdoing, based upon specific and articulable facts from which it can be determined that the action of the police officer is not arbitrary or harassing, the police officer may make a brief, investigatory detention of the individual in order to determine his identity or to maintain the status quo momentarily while obtaining more information. [Cit.]" *Lee v. State*, 201 Ga. App. 827, 829 (2) (412 SE2d 563) (1991).

"Government officials performing discretionary functions are

---

[1] Thomas did not sue Montrose and Holt in their official capacities. See *Fitzgerald v. McDaniel*, 833 F2d 1516, 1520 (11th Cir. 1987). For the distinction in federal law, see *Kentucky v. Graham*, 473 U. S. 159 (105 SC 3099, 87 LE2d 114) (1985). To compare with Georgia law, see *Gilbert v. Richardson*, 264 Ga. 744, 748 (4) (452 SE2d 476) (1994).

granted a qualified immunity shielding them from imposition of personal liability pursuant to 42 USC § 1983 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' [Cits.]" (Footnote omitted.) *Bell v. City of Albany*, 210 Ga. App. 371, 374 (436 SE2d 87) (1993). "Qualified immunity protects government officials performing discretionary functions from civil trials (and the other burdens of litigation, including discovery) and from liability if their conduct violates no 'clearly established statutory or constitutional rights of which a reasonable person would have known.' *Harlow v. Fitzgerald*, 457 U. S. 800, 818, 102 S.Ct. 2727, 2738, 73 LE2d 396 (1982); [cits.] . . . Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit. [Cit.] . . . For the law to be clearly established to the point that qualified immunity does not apply, the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that 'what he is doing' violates federal law. [Cit.]" *Lassiter v. Alabama A & M Univ., Bd. of Trustees*, 28 F3d 1146, 1149 (11th Cir. 1994). "[P]laintiffs must prove the existence of a clear, factually-defined, well-recognized right of which a reasonable police officer should have known. [Cit.]" *Barts v. Joyner*, 865 F2d 1187, 1190 (1) (11th Cir. 1989). "Objective legal reasonableness is the touchstone." *Lassiter*, supra at 1150.[2]

In moving for a directed verdict on Thomas' § 1983 claim, the officers argued that they had not violated any clearly established constitutional right of Thomas'. At trial and on appeal, Thomas insists that it has been clearly established that an officer cannot remove an individual, even an employee, from a public transportation facility to a private room for interrogation on mere suspicion.

However, "[i]t is recognized that no 'bright line' rule or 'rigid time limitations' can be imposed in determining whether detention of a person constitutes a mere investigative stop requiring only an

---

[2] The reason this immunity is given is that it has been decided that it is "unfair — and, as a matter of public policy, unwise — to impose *personal* liability on government officers *unless* the officers had advance notice that what they were doing was unlawful." (First emphasis supplied.) *Lassiter*, supra at 1152. The purpose was explained in *Harlow*, supra at 819: "The public interest in deterrence of unlawful conduct and in compensation of victims remains protected by a test that focuses on the objective legal reasonableness of an official's acts. Where an official could be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate; and a person who suffers injury caused by such conduct may have a cause of action. But where an official's duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken 'with independence and without fear of consequences.' [Cit.]" (Footnotes omitted.)

articulable suspicion or an arrest requiring the existence of probable cause at its inception. [Cits.]" *DiSanti v. State*, 190 Ga. App. 331, 334 (1) (378 SE2d 729) (1989), citing *United States v. Sharpe*, 470 U. S. 675 (105 SC 1568, 84 LE2d 605) (1985). *"Terry* carefully notes that the limitations placed upon a brief investigatory stop depended on the facts and circumstances. They would have to be developed on a case-by-case basis, with the touchstone being always the reasonableness of the officer's conduct." *White v. State*, 208 Ga. App. 885, 888 (2) (432 SE2d 562) (1993).

As authority in support of his position, Thomas relies upon *Bothwell v. State*, 250 Ga. 573 (300 SE2d 126) (1983), and the cases cited therein. *Bothwell* approvingly cited *United States v. Berry*, 670 F2d 583, 601-602 (5th Cir. 1982), for the proposition "that if an individual who has been *seized* is required, without his consent, to accompany the police from the airport concourse to an airport office, this is a full-blown arrest requiring probable cause rather than mere reasonable suspicion." (Emphasis supplied.) Id. at 578 (4).

However, in *United States v. Espinosa-Guerra*, 805 F2d 1502, 1509 (7) (11th Cir. 1986), the court read *Berry* as not being contrary to the *Sharpe* admonition against per se rules for when a seizure becomes an arrest. Consequently, the court in *Espinosa-Guerra* held that a DEA agent did not exceed the bounds of an investigative stop by requesting that a suspect who could not speak English accompany him from an airport boarding area to an airline office. Id. at 1509-1510 (8). In *Barts*, supra at 1191, the court held that *"Berry* is an airport stop case and what was said there must be read in that unique context. [Cit.]"

In this case, we hold that on the basis of the officers' observations of the employee in the locked room in the downstairs area of the MARTA station and thereafter, they did not act unreasonably by requiring him to accompany them from the MARTA platform back to a staff room in the downstairs area so that the status quo could be maintained pending his questioning by his supervisor. Therefore, they did not violate a right of his of which a reasonable police officer should have known.

There is no merit in Thomas' argument that this was not the type of brief encounter which the courts have held to constitute a seizure rather than an arrest, in that it would have taken Thomas' supervisor approximately 20 minutes to arrive at the Brookhaven MARTA station. "In *United States v. Sharpe*, [supra] the Supreme Court determined that a 20-minute detention of an automobile driver did not exceed the bounds of an investigative stop." *State v. Grant*, 195 Ga. App. 859, 863 (3) (394 SE2d 916) (1990).

Accordingly, the trial court erred in denying the motion for directed verdict on Thomas' § 1983 claim.

2. Defendants also contend that the court erred in denying their motion for j.n.o.v. as the award of punitive damages is not supported by the evidence.

We do not reach this issue, because defendants did not move for a directed verdict on this ground. The j.n.o.v. must be based on grounds raised in the motion for directed verdict. *Dee v. Sweet*, 218 Ga. App. 18, 21 (2b) (460 SE2d 110) (1995), interpreting OCGA § 9-11-50 (b).

3. In view of our holding in Division 1, the court did not err as a matter of law in denying Thomas' motion for attorney fees on the ground that he was not a "prevailing party" within the contemplation of § 1988.

In pertinent part, § 1988 states that in any § 1983 action, " 'the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.' " *Hensley v. Eckerhart*, 461 U. S. 424, 426 (103 SC 1933, 76 LE2d 40) (1983); *Maine v. Thiboutot*, 448 U. S. 1, 9 (100 SC 2502, 65 LE2d 555) (1980). Thomas has not prevailed for fee purposes under § 1988 if his federal civil rights claims have been decided adversely to him. See *Finch v. City of Vernon*, 877 F2d 1497, 1507 (21) (11th Cir. 1989) (plaintiff not entitled to an award of attorney fees under § 1988 because he was not successful on his § 1983 claims even though he ultimately prevailed on his state tort claims); *Huffman v. Hart*, 576 FSupp. 1234 (N.D. Ga. 1983) (plaintiff not entitled to an award of attorney fees under § 1988 when both a § 1983 and a pendent state-law claim are presented to a jury and the party prevails on the pendent claim only); compare *Hensley v. Eckerhart*, supra, 461 U. S. at 433 (plaintiff entitled to an award of attorney fees under § 1988 if, in bringing suit challenging the constitutionality of treatment and conditions at the forensic unit of a state hospital, they succeeded on any significant issue in federal civil rights litigation which achieved some of the benefits the parties sought in bringing suit; no state law claims involved); *Allen v. District of Columbia*, 503 A2d 1233, 1236 (1) (D.C. App. 1986) (plaintiff is a prevailing party under § 1988 where jury returned a verdict on both a common-law tort claim and a civil rights claim, although the jury chose to award damages on tort claim only); *Williams v. Thomas*, 692 F2d 1032, 1036 (3) (5th Cir. 1982) (court avoids deciding difficult issue relating to constitutional claim, by holding that plaintiff who prevailed on pendent state tort claim entitled to recover attorney fees under § 1988 since civil rights claim and state claim arose out of common nucleus of operative facts); *Woodard v. Hardee's Restaurant*, 643 FSupp. 691, 693 (3) (W.D. Mo. 1986) (fee award is appropriate when the state law claim upon which a plaintiff actually prevails is accompanied by a substantial though undecided federal claim arising from the same nucleus of facts).

In this instance, the state law malicious prosecution claim and the § 1983 unlawful seizure and arrest claim are not by their nature directly analogous, as was the situation in *Woodard*, or arising out of a common nucleus of operative facts, as occurred in *Williams*. Thomas' federal claim should not have gone to the jury in the first place, and thus he was not a prevailing party on any federal civil rights claim. "The purpose of § 1988 is to ensure 'effective access to the judicial process' for persons with civil rights grievances. H.R. Rep. No. 94-1558, p. 1 (1976)." *Hensley*, supra, 461 U. S. at 429.

In sum, the judgment for malicious prosecution stands, the judgment on § 1983 is reversed, the denial of attorney fees under § 1988 is affirmed, and the denial of the supersedeas bond is moot.

*Judgment in Case No. A96A0085 affirmed. Judgment in Case No. A96A0915 affirmed in part and reversed in part. Case Nos. A96A0273 and A96A0916 dismissed. Birdsong, P. J., and Blackburn, J., concur.*

DECIDED MAY 9, 1996.

*Robert M. Goldberg, Michael E. Bergin*, for appellant.
*Miriam D. Lancaster*, for appellees.